## M. Vosse *et al. v.* The City of Memphis.

CORPORATIONS, MUNICIPAL. *Ordinances. Classifications of privileges.* By the charter of the city of Memphis, the general council was authorized to establish and regulate market-houses and to license and regulate all mercantile houses and fresh meat stores. Under ordinances of the city, market-houses were established. Persons selling in market-house were only required to pay rent for stalls and not required to pay license. By another ordinance it was required that all persons keeping "meat stores," for sale of fresh meat, not at market-houses, shall pay a license of one hundred dollars, and said persons so licensed shall not sell game, fish, vegetables and other articles of merchandise; no such store to be opened within one quarter of a mile of the market-houses. By another ordinance it was required that a license of fifty dollars be required by any keeper of a game or fish store. By another ordinance it is provided that any merchant regularly licensed shall be permitted to sell fresh meat from store in not less quantities than one quarter of any slaughtered animal, without other license. *Held,* that "meat stores" includes all sorts of meats, whether fish, flesh or fowl, and that the city council had no authority to make the selling of game and fish a separate privilege. The other ordinances were authorized. They are but a classification of the meat dealers with a license tax different in amount for one class than for the other, and properly graded by amount required to be sold.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

W. M. Randolph for complainants.

———— ———— for defendants.

FREEMAN, J., delivered the opinion of the court.

This is a bill filed by about fifty parties, engaged in the business of selling fresh meats, at places other than the market houses within the city of Memphis, some of them selling, in addition to ordinary meats, game, fish, poultry and vegetables, or some one or more of these articles. They are all, or nearly all, butchers, holding license from the State and county, authorizing them to exercise this privilege. This is the character of their occupations, as stated in the bill, and conceded in the agreed state of facts in the record.

They are, most of them, men of small capital, only a few having as much as one thousand dollars employed in their respective businesses—some have more than this sum, however.

The city passed an ordinance, which, among other things, in sec. 311, under title, "Meat Stores," required that "each person or firm, for the privilege of keeping a store for the sale of fresh meat at any other place than at either of the market-houses, shall pay one hundred dollars per annum, and said privilege or license shall not authorize the sale, by such person or firm, of fish, game, vegetables, or other articles of merchandise, and all licenses issued under this ordinance shall terminate on 30th of September after issuance."

By the next section, no new store for sale of fresh meats was to be opened within one-fourth of a mile, by the line of the streets, of either market-house, nor any one permitted to be continued within the above distance; and by the next section, "all stores where

fresh meat, fish, game or vegetables are sold, shall be subject to inspection by the market-master, or on complaint of any citizen. The penalties are then prescribed for violating any of the provisions of this ordinance, "by selling fresh meat, fish, game or vegetables, without having obtained the license required, the party being liable for each offense, and for each day's neglect or refusal to take out the license."

By the city charter, the general council is authorized, among many other powers conferred, "to license and regulate all mercantile houses, fresh meat stores, etc.

These ordinances seem to have been passed in 1875. After this, in 1876, another ordinance was passed, requiring a license, and payment of $50 per annum for the same, by any keeper of a game or fish store.

The bill seeks to have this ordinance declared void, on the ground mainly that it is oppressive and unjustly discriminates between the business of complainants and other merchants or dealers in fresh meats, such as the commission merchant and other merchants of the city, who sell by the quarter, and at most only pay $25 for their privilege, and may in a certain contingency pay less; and also, that butchers selling in the market-houses of the city, required to rent stalls from the city, for which they pay one hundred dollars per annum, are not required to take out or pay for any license for this privilege at all.

It is also insisted, that the privilege of exercising the business of a butcher, and of keeping a meat store, were intended to be embraced in the same privilege, or make but one.

There are other matters involved in the case that may be noticed in this place, such as the question as to whether game, dressed poultry, and vegetables, are properly made a separate privilege, or are authorized to be treated as such by the corporation.

As to the question of jurisdiction of the court to enjoin the collection of an illegal tax, as is sought in this case, we need but say here, that there is no demurrer to the bill, and if the party has a right, it not being one of the inhibited questions found in the act of 1873, giving the chancery court extended jurisdiction, the question is not raised on the record so as to be necessarily decided. However, we may say, on the ground that a right is asserted for which there is evidently no adequate remedy at law, and great mischief to the parties, besides greatly increased litigation, therefore the remedy seems not only well chosen, but the most appropriate remedy that could be had.

It is settled by our decisions, that the power to tax an occupation as a privilege, by a municipal corporation, is to be exercised by virtue of the powers conferred in the charter: 2 Head, 367; 1 Hum., 239–40. It is also settled, that in regard to privileges, they are not confined in taxing privileges to the same rules or to the same amount of taxation as the State shall prescribe for its own taxation in such cases; but the power being conferred, the mode of its exercise is left largely to the sound discretion of the governing body: 2 Head, 366.

It has also been held, and correctly, that "these bodies have no power to create a privilege for the

purpose of taxing it, or to discriminate between persons exercising the same privilege, by imposing a tax on one class at a higher rate or in a different mode, or upon other principles, than are applicable to the exercise of the same privilege by others,"—that is, of the same class: *Mayor and City Council of Nashville* v. *Althrop*, 5 Cold., 558–9. We have added, that is of the same class, in view of the cases of *State* v. *Schlier*, 8 Heis., 455, and a case at Nashville, last term, in which it was held that the Legislature might classify the same occupations in proportion to the amount of their business, based on the number of inhabitants. in the town, or number of rooms in a hotel, and graduate the tax on this basis.

The rule is qualified correctly, or stated with proper limitations in the case in 5th Coldwell, 559, quoting from Cooly's Const. Lim., 390, as follows: "A statute would be unconstitutional, which should proscribe a class or a party, for opinion's sake, or which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens, from which others in the same locality or class are exempt." In that case the party was liable to be taxed as a merchant, was included in that class of privileges, but a special tax on the avocation of selling by samples by non-residents of the city. This was held void for the reason given above. The question is, whether under these principles, the claim of complainants can be sustained.

The chancellor held correctly, as we think, as to

the power to create the privilege of keeping a game or fish store, and that this was unauthorized, as a separate privilege, and also as to poultry. No such special privilege is authorized or created by the Legislature, and the city had no power to create such a privilege for the purpose of taxing it. Besides, a "meat store" may well be held to include all sorts of meats, whether fish, flesh or fowl, that is consumed by the citizen as food.

The question is, however, whether there is such a discrimination, injuriously affecting the rights of these parties, as between them and other like dealers, or dealers of the same class, as renders the ordinance obnoxious to the principles we have stated?

The first matter is, whether this discrimination is found as between parties who sell meat in the market-house stalls and who pay no license tax as such, but only pay one hundred dollars' rent for the stall.

That the corporation has "the power to establish and regulate market-houses," in the language of the charter, and as a matter of course, could authorize parties to sell in such market-houses on such terms as may be deemed proper, is clear. This business is authorized as an independent subject by the terms of the charter. It does not, then, belong to, nor is it included in the other class of privileges authorized to be taxed, that is, "truly meat stores," in sec. 55, of the charter. The mode of taxing these last cannot be held to be subject to comparison with the business done at the market-houses, for the purpose of showing a discrimination as between the two. They belong to

different classes of objects and have no necessary connection with each other. Each is an independent subject of regulation, and liable to its own burdens, when properly imposed by law. Besides, it may well be held, that the rent of the stalls, at $100 per annum, was but a different mode of collecting revenue, from that of a license, but substantially the same thing in principle; at any rate, it is certain that the two things do not admit of being classified together, so that any regulation of the one could have any possible bearing upon the amount of taxation with which the other privilege should be burdened. The power to establish and regulate market-houses, given in the charter, involves, as a corollary, the use of such houses in the mode the nature of the thing authorized is usually used, and for the purposes to which such houses are adapted. Persons to sell and carry on the usual business of such houses are necessarily implied, and the terms on which they shall use the house are matters for the discretion of the governing body of the corporation. These terms have no necessary relation with the exercise of other taxable privileges.

But a more difficult question is presented in the provisions of this ordinance, sec. 315, that "any merchant or commission merchant, regularly licensed under ordinances of the city, shall be permitted to sell fresh meat from store without obtaining special license therefor; *provided,* that no such merchant or commission merchant shall cut or reduce the bulk of any piece of fresh meat, or shall permit the same to be done for purposes of sale, or the convenience of purchasers,

while the same is in his store or under his control; and *provided further*, that in no case shall any merchant or commission merchant sell fresh meat in any smaller quantity than one quarter of any slaughtered animal."

Both these sellers are included by the ordinance in the same chapter, under the title of "meat stores." This last section gives the privilege to any merchant or commission merchant, in fact, by virtue of his license as a merchant—an independent and different privilege—to engage in the sale of meat, provided such merchants sell not less than a quarter of an animal at a sale. In other words, it allows the merchant's license to cover the sales of meat, when sold by the quantity stated, while the parties complainant who sell meat as an exclusive business are required to pay one hundred dollars for the exercise of the privilege.

The majority of the court, with whom I do not concur, are of the opinion that this is but a classification of the dealers, with a license tax different in amount for one class than for the other, and properly graded by the amount required to be sold. They hold that the city authorities have the power to classify and proportion the tax according to such classification, and that this has been properly done in this case.

It is assumed that the city authorities may be safely trusted to properly adjust and regulate such matters, and ought not to be interfered with by the courts, without a clear case of violation of the rights of the citizen, and that this is not such a case.

The result is, that the decree of the chancellor must be affirmed.